May it please the Court, my name is Elsa Martinez and I am joined by Attorney Mario Acosta Jr. and together we represent the petitioner, Mr. Eddie Santos Soto. May I reserve two minutes for rebuttal? There are three reasons why this panel shall grant the petition for review and remand the case to the Board of Immigration Appeals. First, the BIA's conclusion that Mr. Soto's testimony alone was sufficient to establish that he accepted a voluntary return to Mexico is not supported by substantial evidence. Number two, the BIA erred as a matter of law when it determined that Ibarra-Flores was not a fundamental change in the law. And number three, Mr. Soto has a right to a 60-day period of voluntary departure at the conclusion of his appeals. In the Ninth Circuit's holding of Ibarra-Flores, this Court held that an alien's own confusing testimony without corroborating evidence from the government was insufficient to determine that the petitioner unknowingly and voluntarily accepted administrative departure. In Ibarra-Flores, the petitioner said, I didn't really know what I signed. But in this case, your client indicated that he did know that he was accepting a voluntary departure. Well, Your Honor, in the record, the judge, in fact, questioned my client whether or not he accepted voluntary departure and he said, I was deported. And the judge repeated to him, you accepted voluntary departure. He says, when I was apprehended by immigration. So there was no evidence that he, in fact, signed something, that he was fingerprinted. There is evidence in the record that was submitted with the appeal to the Board of Immigration Appeals that it was an apprehension in Phoenix, Arizona, by the state police. But there was no other evidence that he was fingerprinted by INS authorities and, in fact, driven by Border Patrol or INS to Mexico. Did he say he knew he had a choice whether to appear before the immigration judge or to leave voluntarily? That's a very good question, Your Honor. In fact, the judge never asked him that. He never distinguished between voluntary departure and deportation. He never said whether or not he was under the threat of being placed in the news proceedings before a judge. And that's exactly your point. We feel that the facts in our case and Mr. Santos-Sotos' case are indistinguishable from Ibarra-Flores, except for the fact that he was found in Phoenix, Arizona. This was not an apprehension at the border and turned around. So, in fact, we do feel that he had even more rights or should have been afforded more protections because he was found within the United States. It seems to me I'm having a little difficulty. He did say, while I was deported, but then in clarifying he said, did you agree to return to Mexico voluntarily at that time? Answer, yes. Why isn't this different from our earlier case? It seems to me that he has answered the question himself under oath. The judge took it upon himself after a quick review of the application for cancellation and removal to inquire about departures. My client stated that he was apprehended in the 90s, clarifies 95 according to the translation. The judge says, did you accept voluntary departure? And he responds, I was deported. There was never any clarification as to whether or not he was given something to sign or was under the threat of deportation or merely put in a patrol car and driven across the border, Your Honor. Isn't the issue whether or not he voluntarily let himself go back to Mexico without going through the deportation proceeding, isn't that what we're looking for? What we're looking for, Your Honor, and what we're asking for is for the court to review the board's decision based on substantial evidence. And in this Ninth Circuit case of Ibarra-Flores, this Court has held that the alien's own confusing testimony is insufficient without more. Here, the court turns to the government counsel and says, do you have any proof of any deportation? And they say, no, Your Honor, we don't. Without that, the judge had already – was already predisposed to pretermine the cancellation or removal application. He, in fact, said by mere two questions of the alien, were you – did you accept voluntary departure, which he said yes. That was sufficient for him under the standard of Romales, but it certainly isn't sufficient under Ibarra-Flores, which holds that even with corroborating evidence, the government has to establish that the Petitioner knowingly and voluntarily accepted administrative departure. This record is completely remiss of any evidence that Mr. Santos Soto knew that he was accepting voluntary departure, that he was foreclosing his right to go in front of an immigration judge and to litigate his case even further. He was apprehended at Phoenix, Arizona by the State police. He believes he was taken to the INS office in Phoenix and driven across the border. Nothing more was presented in this case, Your Honor. Secondly, to raise a point that our motion to reopen was denied by the Board because they held that Ibarra-Flores was not a fundamental change in the law. We disagree with that. We believe that Ibarra-Flores does set out a new standard quite different from the standard that was previously applied in Romales. And we believe that the motion to reopen should be denied because it was not a fundamental change in the law. In our motion to reopen, the BIA basically held the motion was untimely and that a fundamental change in the law, although it's been defined as a material departing from existing legal principles under the prior standard of Romales, when an alien simply stated that he had departed under the threat of deportation, this was sufficient to establish there was a break in his continuous physical presence. We know differently today, and that's in Ibarra-Flores. We believe that the BIA's decision to deny the motion to reopen was an abuse of discretion. We believe that it was irrational contrary to law and that this Court has jurisdiction to review the denial of that motion to reopen because whether or not something is a fundamental change in the law is a question of law. And lastly, Your Honor, we ask that the petition be granted and re-amended. We ask that it be granted voluntary departure under matter of A.M. Let me ask you that about the Padilla argument. Is it correct that you raised that for the first time in the petition for review of the denial of the motion to reopen rather than in your merits case? Did you ever raise that issue in the merits briefing? Whether or not the alien could accrue a new period of voluntary departure. In the Padilla, Padilla argument that the BIA could not shorten the time period for voluntary departure. We did not, Your Honor. At that time, a matter of A.M. hadn't been decided, and we essentially, the judge did grant the alien 60-day voluntary departure of the board, subsequently shorten it to 30. And it was raised initially in our motion to reopen, yes. Why isn't the issue waived? I believe that the matter of A.M. hadn't been decided, Your Honor, and hadn't been raised previously, whether or not it was a proper decision for the Court to shorten the time of voluntary departure. And just like the issue of the bar floors hadn't been previously available or hadn't been fully developed. Thank you. Good morning, Your Honors. May it please the Court, my name is Reagan Hildebrand, and I represent the Office of the Attorney General in this matter. The Attorney General requests this Court to do two things today. First, to find that the BIA could not have used its discretion in denying Mr. Soto's motion to reopen, because that motion to reopen was untimely filed, the BIA considered improperly found that the bar floors versus Gonzalez did not apply and warrant reopening, and because Mr. Soto failed to provide new evidence to support that motion. And secondly, to remand this case to the BIA for the sole purpose of redetermining the voluntary departure period in light of this case holding in Padilla, Padilla versus Gonzalez. As to the first point, Your Honors, the motion to reopen, the Attorney General contends the BIA could not have used its discretion denying Mr. Soto's motion to reopen for three reasons. The first being that it was untimely filed. Under 8 CFR section 1002.2C, a motion to reopen must be filed within 90 days of a final order of removal. Here, the BIA issued its final removal order on August 12, 2004, yet Mr. Soto did not the BIA's final removal order. Since it was clearly out of time by this point, the BIA did not abuse its discretion in denying the motion for an untimely filing. Secondly, the BIA considered improperly found that a bar of floors versus Gonzalez did not apply to Mr. Soto's case to warrant the motion to reopen. Contrary to Mr. Soto's contention in his brief at pages 7 and 8, the BIA did consider the application of the bar of floors to the case, but concluded it was not applicable. Your opponent suggests that there needs to be something more than just agreeing that he took a voluntary departure, that he has to have some understanding of the import of that. Why isn't that the case? Respectfully, Your Honor, Petitioner's argument essentially shifts the burden of proof then from the alien. Under INA section 240A, for purposes of cancellation removal, the alien has the burden to establish continuous physical presence and the other elements required. By placing the burden on the government to show that he had accepted a voluntary departure in lieu of removal proceedings, they've essentially shifted the burden of proof under the INA. Moreover, this Court in the bar of floors versus Gonzalez did not abandon the rule that testimony evidence alone was sufficient to establish a knowing and voluntary departure, but found in that case that because the alien was confused as to what happened, the Court held that it was far from clear that Petitioner had signed a voluntary departure form. But here, Your Honors, in two separate removal proceedings where Mr. Soto was represented by counsel, he clearly admitted that he accepted voluntary departure in lieu of removal proceedings. At his first hearing on April 18, 2003, the immigration judge asked him, quote, did you ever appear before an IJ other than me, suggesting he had gone to removal proceedings? And Mr. Soto said, no. He was then asked, quote, did you accept a voluntary return to Mexico in 1995? And Mr. Soto said, yes. Immigration picked me up. There was some clarification that this was in Phoenix, and then the IJ then asked him one more time, quote, did you agree to return to Mexico voluntarily at that time? And Mr. Soto said, yes. At his second hearing on June 30, 2003, where he was again represented by counsel, the immigration judge again asked him, quote, sir, in 1995, did you go see a judge after the INS arrested you? Mr. Soto said, no. The immigration judge then asked him again, and he said, no. At that time, when Mr. Soto was detained by immigration, immigration had two choices with an alien in this situation. They could either place him in removal proceedings and bring him before an immigration judge, or the alien could accept voluntary departure in lieu of removal proceedings and return to their home country. Here, Mr. Soto clearly admitted at two separate hearings that he was given the option of going before an immigration judge. He didn't, but accepted voluntary departure in lieu of such removal proceedings. Thirdly, your honors, the attorneys are most content that the BIA properly found that Mr. Soto's motion to reopen was not warranted because he didn't attach any new evidence to that motion. And he admitted such in his brief before this court, but suggested a bar for his Muslims Gonzalez was sufficient to allow that motion to reopen. But since that case was not applicable to this matter, the government contends that the BIA did not abuse its discretion to deny his motion to reopen that grant. Finally, your honor, the attorney general requests this court to remand the case of the BIA with the sole purpose of determining the voluntary departure period in light of this court's holding of Padilla Padilla versus Gonzalez. When Mr. Soto was granted voluntary departure in 2003, it was initially for 60 days. But when the BIA dismisses appeal first in 2004, it reinstated the voluntary departure period for a 30-day time period in a decision that it affirmed without an opinion. But this court held in Padilla Padilla versus Gonzalez that the BIA could not do as such in such an opinion. That is, it could not reduce the voluntary departure period when it issued an appeal of affirmance without the opinion. Here, Padilla was issued shortly after the BIA's first decision in 2004, but one day prior to the BIA's decision in 2006, where it rejected Mr. Soto's motion to reopen. As such, it didn't have the opportunity to apply Padilla Padilla in the first instance. And accordingly, the attorney general requests this court to remand for that sole limited purpose. That came at the end of your gray brief, your last brief you filed, which was just within the last, what, last week or so. Yes. On behalf of myself and Ms. Kendall, I apologize for that. There was some sort of error with the delivery of the brief. I understand that this issue was alive all the way through the briefing period. It had been alive for a long time. It's somewhat surprising at the very end the attorney general wants us to remand. But the difficulty I have with the remand is that it appears to me that the issue has been waived. If it's been waived, we can't remand it. Why isn't this issue waived? It wasn't raised at the first time of the voluntary departure time. The problem is with the timeline and decision of the case. When Mr. Soto first appealed to the BIA, Padilla Padilla hadn't been decided. And so the case law in this circuit didn't hold that the board could not reduce the voluntary departure period. But then when the Board of Immigration Appeals heard Mr. Soto's case again in 2006, Padilla Padilla came after the court had, the BIA had an opportunity to consider the voluntary departure period. It comes down to the timeline, Your Honor, that the case hadn't been decided by this court, and it's such that the BIA didn't have an opportunity to address that issue, but should now in the first instance. Are you suggesting that this issue cannot be waived? No. No. Certainly with Padilla Padilla on established law in this circuit, that now a Petitioner knowing of the existence of Padilla Padilla, they should raise that issue in their opening brief to this Court if they believe the Court has cut the voluntary departure  Is the Attorney General's position that that is not an issue until we say it's an issue? Clearly everybody knew in this case that the I.J. gave 60 days and the Board gave 30 days. I know the difference between 60 and 30. Do we have to have a case before the issue is waived? That is, the penalty is already there. The problem is there. The individual was going to only get 30 days instead of 60 days. Why isn't that when the waiver starts rather than waiting for us to tell you, which is obvious to everybody who looks at the record? Respectfully, Your Honor, it doesn't go down to the days. It's the fact that the Board's process by means which they did it that here in this case they made the decision to cut the voluntary departure period in an opinion without an – in an affirmance without any opinion. And we all knew that happened, and they knew that happened. He knew that happened when it occurred. That's correct, Your Honor. But when the Board made that choice, Padilla-Padilla v. Gonzales had not been decided yet by this Court, where the Court explicitly held that the CFR was clear that the BIA could not add any or make any changes to an IJC. The case just tells you how it came out, but the issue was there. Clearly the issue was there. The defense – he had to know that he had been decreased from 60 to 30. He had the complaint in front of him. He could make the issue – he could raise the issue at that time and did not. I think what the Attorney General is arguing here is that there's no waiver issue until we tell you what is obvious. That is, when the IJ goes for 60 and the Board goes for 30, you've got a right to complain. That doesn't exist now under Padilla. Respectfully, Your Honor. But you didn't need a case for us to tell you you have a right to complain at that. The Petitioner here was harmed at the time that the Board made its decision and said 30 instead of 60. It seems to me that at that time the Petitioner has a responsibility to do something about it, not wait until we say there's a problem. And I don't quite understand the Attorney General's argument of waiver on this issue. It isn't necessarily when we say there's a problem. It's when there's a problem it's obvious that the claim arises. Your Honor, respectfully, I'm not sure at that time that the problem would have been obvious. There was no opinion from this Court saying that the BIA could not cut the voluntary departure period. If you could speak into the microphone. I'm sorry, Your Honor. If you could move the microphone. I could hear you a little better if you move it because it's directional. I assume about a time if I. . . We don't have the best microphone system here yet. But it strikes me that the person knows there's a problem. Somebody took 30 days from them. They have a right to raise a claim. No one in our Court said they couldn't. There's no decision that said they couldn't. And yet the Attorney General is saying until the case comes up it isn't raised. It seems to me as a matter of principle if the Attorney General takes this position, we could have cases coming up that are 20 years old because no case was made yet. So, therefore, even though a claim is obvious to a person that they ought to make it, they'll get to 20 years. I'm not sure that we want to get into that difficulty, and that's why I want to know a little bit more about the Attorney General's position. You pick up one end of the stick, you get the other end of the stick. If the Attorney General wants to have that. . . If the Attorney General wants to open up that for the future, we'll give it consideration. But I wonder about it. Well, Your Honor, I say that out of time. I don't want to take up the Court's time anymore. I would be more than happy to provide supplemental briefing on this point. Well, I'm sure the Attorney General has thought this through carefully and has made a decision that that opening up can take place and waiver will not occur until we assign a case that says there's a problem. Maybe the Attorney General's right on that. It's really his challenge to muster all of these immigration cases through the process. Well, thanks for your response. Thank you, Your Honor. Your Honor, in rebuttal, I'd like to make two points. One, that the government's arguments fail under the matter of Romales. In Romales, the alien was deported under threat of deportation. There is no evidence in this record that my client was under the threat of being put in deportation proceedings. And secondly, under Ibarra-Flores, at least in Ibarra-Flores, there was some evidence that there was a document that was signed. There was no document that was provided here by the government. There was no evidence that my client knowingly and voluntarily accepted voluntary departure and was not willing to stand any kind of removal proceedings when he was apprehended in Phoenix, Arizona. So we do believe that Ibarra-Flores does support a remand in this case so that, at a minimum, there would be a determination of whether or not there was voluntary departure, or to permit Mr. Santos-Soto to apply for cancellation or removal. This case is submitted. The next case is Serrano-Gutierrez v. Mukasey.
judges: Wallace, Gould, Ikuta